UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANDREW L. SWANGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-192-AZ |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

This matter is before the Court on Plaintiff Andrew Swango's appeal of the

Commissioner of the Social Security Administration's (the "Commissioner") denial of

disability benefits.[1] Swango argues that the Administrative Law Judge ("ALJ")

committed error when determining whether he could sustain full-time employment

and rejecting certain medical opinion evidence when ruling on his application for

benefits. For the reasons discussed, the Court disagrees with Swango's arguments

and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's

written decision.

## **Background**

Plaintiff Andrew Swango filed an application for disability insurance benefits

and supplemental security income on August 19, 2022. A.R. 11.[2] He was 47 years old

---

[1] On May 20, 2205, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 12.

[2] Citations to the Administrative Record, filed at DE 8, are throughout as "A.R."

when he applied for disability benefits. A.R. 743. He has a high school education and previously worked as a janitor, caregiver, housekeeper and assembler. *Id.* at 751.

Swango applied for benefits claiming a disability onset date of June 7, 2022. *Id.* at 13. His claims were denied in his initial application and upon reconsideration, and Swango requested a hearing before an ALJ. *Id.* at 11. On November 27, 2023, the ALJ held a hearing at which Swango was represented by an attorney and a Vocational Expert ("VE") testified as well. *Id.* On March 4, 2024, the ALJ issued a written opinion denying benefits. A.R. 8-24. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. Plaintiff then filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Dvorak was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. A.R. 11. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with bilateral radiculopathy; obesity; chronic obstructive pulmonary disease (COPD); a depressive disorder; an anxiety disorder; posttraumatic stress disorder (PTSD); and a personality disorder (PD). *Id.* at 13.

At step two, the ALJ considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. Specifically, the ALJ

2

considered, addressed and determined Plaintiff did not meet Listing 1.15 (disorders of the skeletal spine), 1.16 (Lumbar spinal stenosis), 11.14 (peripheral neuropathies) and 3.02 (chronic respiratory disorders). The ALJ found that Plaintiff's impairments or the combination of them did not meet or equal any applicable listing because he did not have a documented medical need that satisfied all of requirements of any of these listings. *Id.* at 14-16.

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess his Residual Functional Capacity (RFC). The ALJ found he had the capacity:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ladder, ropes and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation; understand, remember, and carry simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief, occasional supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting.

A.R. 16.

The ALJ then recounted the testimony and evidence regarding Plaintiff's medical history that supported or factored into the RFC. While the ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause alleged symptoms," his statements concerning "the intensity, persistence and

limiting effects of these symptoms" were not entirely consistent with the medical evidence and other evidence in the record. A.R. 17.[3]

The ALJ summarized evidence relating to both mental and physical conditions. The ALJ noted that Plaintiff's anxiety, lack of motivation, and agitation were primarily situational and related to his current living, work and financial situation. A.R. 18 ("[S]o while he sometimes lacks motivation to do things, he is capable of doing many activities, and records show improvement in his mood and anxiety when he engaged in activities and stays away from the chaotic environment of his girlfriend's household."); *id.* ("While he does have some anxiety and mood symptoms, it appears to wax and wane depending on situational stressors, and he does have improvement with medications."). The ALJ further noted that the mental limitations imposed were consistent with the findings of the state disability determination services (DDS) psychological consultants. A.R. 21. This finding regarding Plaintiff's mental symptoms informed the limitations in the RFC relating "to simple, repetitive tasks in a routine work setting, with only brief and occasional interactions with supervisors and coworkers, consistent with the findings of the consultative examiner." *Id.*

With regard to Plaintiff's physical limitations, the ALJ contrasted the findings of the DDS consultants and consultative examiner Nicole Dyer, MD. The ALJ adopted the limitations found by the DDS consultants. A.R. 20. The ALJ found Dr. Dyer's opinion unpersuasive and not supportive of any additional limitations because it:

---

[3] The Court does not recount Plaintiff's entire medical history or summarize all of the ALJ's findings, but will highlight those portions which are relevant to the specific arguments raised by Plaintiff on appeal.

> appears to be a recitation of the claimant's reported limitation, and it is not fully supported by the objective medical evidence of record of consistent with the overall normal exam findings, including normal gait speed, 5/5 muscle strength in all upper and lower extremities, 5/5 grip strength bilaterally, negative SLR bilaterally, and he was able to get on and off table without assistance, and although he was obese with mild antalgic gait, he was able to squat, able to walk on heels/toes, and able to tandem walk. Further, regarding her statement that "If the patient is using an assisted device the patient prefers to use Cane", it is unclear what this is based on, and it appears to be generic language, as there is no evidence to corroborate the use of a cane, and it is inconsistent with the above noted exam findings.

*Id.*

At step four, the ALJ determined that Plaintiff could not perform any of his past relevant work. A.R. 22. But the ALJ found there were sufficient jobs that Plaintiff could perform given his RFC. Representative examples included mail clerk, inspector, and assembler as those jobs are defined in the Dictionary of Occupational Titles ("DOT"). *Id.* at 23. Accordingly, at step five, Plaintiff was found not to be disabled and the application for disability benefits was denied. *Id.* at 24.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)

(citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). But "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner*, 627 F.3d at 618. Remand is appropriate only "when it is unclear if the ALJ examined the full range of medical evidence, or if the court

6

cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

### A.  The ALJ's RFC Determination and Whether It Precluded Full-Time Employment

Plaintiff raises two arguments on appeal relating to how the ALJ used the vocational expert's testimony in determining that Plaintiff could sustain substantial gainful employment. First, Plaintiff argues that the ALJ was required to but did not resolve the fact that the vocational expert's testimony regarding the representative jobs of mail clerk, inspector and assembler of small products conflicted with "how competitive work is described in the [Dictionary of Occupational Titles] and [Social Security Administration] policy." DE 15 at 13.[4]

The Commissioner responds that the VE's testimony was based on the DOT *and* the VE's knowledge and training, as recognized by the ALJ. *See* A.R. 24 ("I accept the vocational expert's testimony as consistent and reliable because it is based on the expert's professional experience, because it is generally consistent with the DOT, because it is based on sources of data that I consider to be reliable, even if and when it is not consistent with the DOT, and because it is not contradicted."). Furthermore, as the Commissioner notes, Plaintiff did not challenge the vocational expert's testimony at the hearing, and no obvious conflict between the testimony and DOT exists.

---

[4] Page number citations to the parties' briefs refer to the page number located in the header created by the Court's CM/ECF system rather than the parties' pagination located at the bottom of the page of any particular document.

Relying on *Overman v. Astrue*, 546 F.3d 456 (7th Cir. 2008), the Commissioner argues that Plaintiff's failure to identify any apparent conflict with the DOT or cross-examine the vocational expert at the hearing means the Court's review of this issue is further cabined, analogous to clear error. In *Overman*, the Seventh Circuit held that failure to identify any supposed conflicts at the administrative level is "not without consequence." *Overman*, 546 F.3d at 463. A court will only reverse if "the conflicts were obvious enough that the ALJ should have picked up on them without any assistance." *Id.* (citing SSR 00-4p).[5] The Court agrees with the Commissioner that because the ALJ was entitled to rely on the vocational expert's expertise for purposes of providing evidence regarding available jobs and supervisor interaction in formulating the RFC. And because the DOT does not address supervisor interaction restrictions, there was no obvious conflict between the DOT and the vocational expert's testimony.

Next, Plaintiff argues that the ALJ and the vocational expert's testimony relied upon by the ALJ failed to explain "how Plaintiff would be able to sustain competitive employment on a full-time basis" with a limitation of only "brief and occasional" contact with supervisors and coworkers in Plaintiff's RFC. DE 15 at 13. Plaintiff

---

[5] SSR 00-4p was rescinded and replaced by SSR 24-3p effective January 6, 2025. *See Lorenzo K. v. Comm'r of Soc. Sec.*, No. 3:23-CV-550-SJF, 2025 WL 938495, at \*9 (N.D. Ind. Mar. 27, 2025) ("SSR 00-04p was rescinded and replaced with SSR 24-3p as of January 6, 2025.") "SSR 24-3p states that, by rescinding SSR 00-04p, SSA 'will no longer require [its] adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT.') (quoting SSR 24-3p). While SSR 00-4p controlled when Plaintiff's claim was adjudicated at the administrative level, the Court notes this change because even if the Court were to remand on this issue, the new regulation would apply for any reconsideration of Plaintiff's claim.

correctly notes that "occasionally" means up to a third of the day in vocational terms. *Id.* Plaintiff extrapolates from this to say that "the ALJ found that for two-thirds of the workday, the Plaintiff would be unable to respond appropriately to supervisors and work situations." *Id.* Plaintiff argues that given this conclusion, the ALJ was required to find that he was unable to sustain employment full-time employment. The Commissioner's response is primarily that Plaintiff's argument relies on a fundamentally incorrect reading of the ALJ's decision. And the Court again agrees with the Commissioner.

Simply put, Plaintiff misconstrues the RFC's limitation and what the ALJ found that he was capable of in a work context. As the Commissioner frames it, "Plaintiff envisions a scenario where he is required to interact with coworkers and supervisors frequently or constantly throughout the workday, but he can only do so appropriately for one-third of the time." DE 19 at 4.  Plaintiff's argument rests on the premise that all jobs entail panopticon-style supervision and constant interaction with coworkers, and Plaintiff's limitation of "brief, occasional supervision and interactions with coworkers" precludes him from any type of employment. A.R. 16. But that is simply not the case and neither the vocational expert nor ALJ said as much. If the RFC meant what Plaintiff argues it does, then all employment would be presumptively beyond Plaintiff's abilities, and that is clearly not what the ALJ had intended or meant. The Court will not contort the plain language of the RFC into something it is not and then declare it an obvious error on the part of the ALJ.

9

Instead, a common sense reading of the written decision shows that the ALJ and vocational expert meant is that for at least two thirds of Plaintiff's workday he could not be under direct supervisor or interacting with co-workers. In other words, he would be limited to jobs with more independent tasks that most of the time would not require direct oversight. And the representative jobs testified to by the vocational expert and adopted by the ALJ reflected that type of work environment. Accordingly, the ALJ did not error.

**B. The ALJ's Rejection of Certain Medical Opinion Testimony**

Plaintiff next argues that the ALJ improperly rejected medical opinion testimony from consulting physician Nicole Dyer, M.D. DE 15 at 15.. As discussed above, when analyzing the evidence that helped determine Plaintiff's RFC, the ALJ stated that the opinions offered by Dr. Dyer were "unpersuasive" as they appeared on their face to be a "a recitation of the claimant's reported limitation" and "not fully supported by the objective medical evidence of record of [*sic*] consistent with the overall normal exam findings…" A.R. 21. Plaintiff argues that in doing so, the ALJ conducted a flawed "supportability analysis" and a flawed "consistency analysis." DE 15 DE 15 at 17 (citing A.R. 21). The Court disagrees.

As the ALJ explained, Dr. Dyer noted that at the time of the examination, Plaintiff had "normal gait speed, 5/5 muscle strength in all upper and lower extremities, 5/5 grip strength bilaterally, negative SLR bilaterally, and he was able to get on and off [the] table without assistance." A.R. 21. And "although he was obese with mild antalgic gait, [Plaintiff] was able to squat, able to walk on heels/toes, and

10

able to tandem walk." *Id.* The ALJ noted these underlying findings contradicted the limitations that Dr. Dyer suggested. The ALJ furthermore pointed out that while Dr. Dyer wrote "If the patient is using an assisted device the patent prefers to use Cane," it was "unclear what this is based on … as there is no evidence to corroborate the use of a cane, and it is inconsistent with the above noted exam findings." *Id.* In other words, the ALJ pointed out how Dr. Dyer's statement was unsupported Dr. Dyer's own objective observations of Plaintiff and "appears to be generic language" or formulaic. *Id.*

"[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, given the very similar language between Plaintiff's subjective complaints and Dr. Dyer's opinion, the ALJ's finding that Dr. Dyer's opinion was primarily a recitation of Plaintiff's subject complaint was understandable. But the ALJ did not stop there. The ALJ further noted how Dr. Dyer's opinion was contradicted by evidence from her own exam findings and otherwise unsupported.

Plaintiff, of course, would have preferred the ALJ to have adopted Dr. Dyer's opinion and presumably give less credence to other medical professionals. But the ALJ did not, and the ALJ adequately explained the reasons why. Plaintiff's effort on appeal to point to other evidence which could offer support for Dr. Dyer's statement is unavailing because there is no indication in the record that the ALJ did not consider the same evidence Plaintiff is now raising with the Court. *See* DE 15 at 18 (cataloging

11

"evidence in the record from other sources to support Dr. Dyer's opinion). It is axiomatic that the "ALJ need not specifically address every piece of evidence" in the written decision so long there is substantial evidence supporting the conclusions. *O'Connor-Spinner*, 627 F.3d at 618. Remand is only appropriate "when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford*, 658 F. Supp. 3d at 668 (cleaned up). Here, Plaintiff does not argue that the ALJ failed to consider any evidence and the ALJ's reasoning is both traceable and supported. Instead, Plaintiff simply disagrees with the result of how the ALJ weighed conflicting evidence. "Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). And a reviewing Court "may not re-weigh the evidence" on its own accord or simply because a Plaintiff disagrees with an ALJ's conclusions. *Id.*

### Conclusion

For the reasons discussed, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant Commissioner of Social Security.

SO ORDERED this 17th day of March 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT